DANGERFIELD AND OTHERS V. PASCHAL AND OTHERS.

Where the plaintiffs relied upon the presumption of a grant arising from long, con-
tinuous possession, but failed to show the boundaries of their claim, or that the
spots actually occupied were claimed by the defendants, it was held that they
could not recover, although the defendants took defence for the whole.

The presumption of an ancient grant, which arises from long, continuous possession,
is not impaired by the production of an inchoate title ; on the other hand, such
inchoate title is proper evidence of the extent of the claim and possession.

Appeal from Bexar.

*S. G. Newton*, for appellants.

*I. A. & G. W. Paschal*, for appellees.

LIPSCOMB, J.   The appellants allege, in their petition, that
they are the owners of two leagues of land, granted by the
Spanish Government, in 1807, to Feliciana Duran Cubier,
under whom they deraign their title as heirs, and some of them
by purchase.   They set out in their petition, the two leagues
claimed, by metes and bounds ; that they are in possession of the
land ; they aver that the Paschals, two of the defendants, well
knowing that the lands aforesaid belonged to the petitioners,
had located, or caused to be located, upon a portion thereof
land certificates, and had procured patents from the General
Land Office, for a portion so located, and sold a part of the
land to one Evans, another of the defendants ; that they were
cutting down the timber thereon growing, greatly to the dam-
age of the petitioners ; that their locations and patents from
the General Land Office are void ; but that they injure and
throw a cloud upon the title of the petitioners ; they pray
judgment for the trespasses so committed by the defendants,
and that the patents and locations be adjudged to be null and
void.   The Paschals jointly answer, acknowledging the loca-

tions, and that they had procured patents for a part of their locations, and designed prosecuting measures to procure patents for the balance, but deny that the plaintiffs had any title, valid in law, for the land so located, and deny that there had ever been a legal grant to Feliciana Duran Cubier, and allege that the land, when located upon, was a part of the public domain, on which they had a legal right to locate genuine land certificates. The defendant Evans answered, denying that the plaintiffs had any valid title to the land in controversy. The other defendants answered, but set up no title inconsistent and adverse to plaintiffs' title.

On the 7th of February, A. D., 1849, the plaintiffs amended their petition; this amendment, however, presents nothing material to be considered, different from the original petition.

On the 15th November, A. D., 1852, by leave of the Court, the plaintiffs again filed an amendment to their original petition, as follows: "They allege that the plaintiffs and those, "under whom they claim title, have had peaceable and quiet "possesson of the land claimed and described in their original "petition, for more than fifty years before the filing of this "suit; and that the same has been thus held in good faith, by "valid and good titles emanating from the competent author-"ities."

There was a jury empannelled; and when the plaintiffs had gone through with their evidence, the defendants demurred to it, as not sufficient to support the plaintiffs' action; and there was a joinder in demurrer; on which the Court gave judgment for the defendants.

There is found, transcribed in the record, a regular incipient title to two leagues of land, including the ranch previously, it seems, occupied by the grantee, to Feliciana Duran; and every thing seems to have been done, required by law, to put her in possession, that could be done by the local authorities; but incomplete as to perfect titles, until it had received the sanction of the Intendant General of the Intendency of San Luis Potosi. In fact, it was precisely in the condition of

the title of Perez, in the case of Paschal v. Perez, 7 Tex. R. 348. This incipient title seems to have been authenticated by the oath of two witnesses for record, in the County Court records of Bexar county, on the 16th day of December, 1837, before John W. Smith, Clerk of the Court. This part of the transcript, both parties concur in repudiating, as no part properly of the record, and that it was not used in evidence before the jury; and their statement is confirmed by the fact that it is not included in the statement of facts certified by the Judge, before whom the case was tried.

It is clear that the plaintiffs rested their case solely and exclusively on the presumption, in law, of a valid title, arising from possession alone; and that they believed, (though why, is not perceived,) that the introduction of this documentary, incipient title would prejudice the presumption upon which they relied. Whether they were right in this or not, cannot now be questioned, because they certainly had a right to manage their own case, and withhold it, if they thought proper to do so. The appellees' counsel contends that no evidence of the possession, under the last amendment to the petition, could have been received; because the amendment does not set out the metes and bounds of the land claimed, and makes no averment that would let in evidence of the land claimed as property by the plaintiffs. He seems to suppose that the amendment must be considered as standing unconnected with the original petition, or as an abandonment thereof. In this he is clearly mistaken. The amendment is not an abandonment of the original petition; and it refers expressly, in setting up the possession, to the land described in the original petition. The defendants having demurred to the plaintiffs' evidence, we must look to the plaintiffs' evidence alone; and if under the issue joined, that evidence, with every reasonable deduction that a jury would have been permitted to draw from it, in favor of the plaintiffs' right, would not sustain the action, the judgment of the Court below must stand.

I have examined the evidence in support of the plaintiffs'

possession, upon which they claim a presumption of a non-existing deed, with all the care and attention that I have been capable of bestowing upon it; and I do not believe that any thing in it, favorable to the rights of the plaintiffs, has escaped my notice. Then, as to the fact of the possession of Dona Feliciana, of a jacal and corals, for a long period of time, and the locality of such possession, and its continuance in her descendents, and those claiming through them, down to the present time, there can be no doubt. There is not so much certainty as to the precise time when it commenced. Some of the evidence carries it back to about the commencement of the present century. Others clearly show that it existed for a period of time of thirty-four to forty years before the commencement of this suit. The lowest time would be abundantly long enough to raise a presumption of a legal title to support. The fact of the continuity of the possession is better made out than it was in the cases of Herndon v. Cassiano, 7 Tex. R. 322, and in Paul v. Perez, 7 Tex. R. 338; but whether it is as well supported as those cases, in other essential requisites, will be seen hereafter. The doctrine of a presumption of a non-existant grant, to support a long continued possession, had a different origin from prescription and limitation; but there are some rules applicable to all these alike, and one of these is believed to be, that the possession, when made out, extends to the boundaries claimed, and will embrace all within its ambient line. The evidence in this case, though as before said, complete and conclusive as to the fact of the possession, is wholly defective as to the amount or quantity claimed, or the boundaries claimed, and does not show that the defendants' locations embrace the possessions of the claimants. It is true that it is shown that the locations are contained within the metes and bounds set out in the plaintiffs' petition, but there is no proof to be found in the statement of facts, in support of those metes and bounds. The testimony of McDonald and Giraud, surveyors, vague and uncertain as it would be in its application, in any event or

circumstances, amounts to nothing at all, in the absence of proof of the maps of the County Surveyor. The survey made by Giraud, was not in evidence. If it had been, it would have proved nothing of itself, in the absence of all evidence to connect it with the claim of possession. In the case of Herndon v. Cassiano, the boundaries of the claim, founded on the possession, was proven; and that the location was within those boundaries. In the case of Paul v. Perez, it was proven that the house, a large stone mansion, the residence of Perez, was included in the location, under which Paul claimed title.

If the incipient title to Dona Feliciana had been in evidence, it would have furnished evidence of the amount of land claimed; and the diagram of the survey, accompanying the survey and act of possession, would have afforded evidence to some extent, if not conclusive, as to the particular land comprehended in the claim. It would have given a starting point, at least. Nor is it perceived in what way it could have impaired the presumption of a final title, arising from long, continued possession, by the introduction of such testimony.

In the case of Paschal v. Perez, there was no proof of such continued possession, as would raise the presumption that a final title had ever been issued, or of a non-existent grant; and this presumption of a non-existing grant, does not rest upon the hypothesis, that such grant had actually once existed, but it is the presumption of law, even if no such grant had ever existed, for the purpose of protecting a long, continued possession, with a claim of title. The aspect of the case of Paschal v. Perez would have been very materially changed, if it had been further supported by a long, continued possesion, with his claim of title. This presumption can never be invoked, in support of any claim of title, unless coupled with a long, continued occupancy and enjoyment; and when so coupled, it will always arise, unless it be shown that it never could have been granted, as in the case of the Forest of Dean, which, by Act of Parliament, was prohibited from

being granted.    (Parker v. Baldwin, 11 East, 488 ; Cooledge
v. Learned, 8 Pick. R. 508 ;  Lewis v. San Antonio,  7 Tex.
R. 302–307.)

We have enlarged more upon this  question than we other-
ways should ; but we wished it distinctly understood how it is,
that in Herndon v. Cassiano, and Paul v. Perez, long con-
tinued possession saved the land to Cassiano and to Perez, and
it has failed to do the same in this.    We wished to show, in
what this case differed in proof from those ;  and that in  this
we have not entrenched in the slightest degree on the prin-
ciples decided in those cases ; and finally, to show that we
have no authority to decide a case, as the record possibly
might have presented the facts of the  case, but as it is really
presented ;  that we have nothing to do in the  presentation of
the facts, but to decide upon them  as presented.    The judg-
ment is affirmed.

Judgment affirmed.

WHEELER, J.  The Reporter will please note, that not having
heard the argument, I did not participate in the decision.