Action for damages on account of negligence. From a judgment for plaintiff the defendant appeals. No error.
Plaintiff was "ball-hooting" a "Wahoo" log down the mountain-side. "Ball-hooting" is the process of removing logs down a precipitous side of the mountain, where teams and other customary means cannot be used. The "run" side of the log is "skinned" and the log goes endwise by gravity until it reaches a place where other means can be used to move it. The log, a Wahoo or Indian Bitter, was about 14 inches in diameter and 12 feet long, and very heavy. Grover Anglin, foreman for defendant, was in charge of the laborers, one of whom was plaintiff. Anglin and a laborer were also getting out logs below the plaintiff and Grover Lewis. These two had cut a log from a tree on the *Page 744 
hill. They had an axe and a saw. When the log had been cut off Anglin came up and ordered plaintiff and Lewis to "peel the run of the log and slide it down." Peeling one side of the log makes it slide easily. "This was on the hillside, and the little end of the log was running first." When it was peeled plaintiff and Barnett started to "run" the log down and it "ran" until it "butted" against a fallen tree. This tree was larger than the Wahoo log and stopped its going when it struck it. Anglin, foreman, told Barnett to get the Wahoo log over the fallen log and "slide it on down the hill." Plaintiff and Barnett went, pursuant to orders, and tried to get the log over the obstruction. Each had a peavey. There were two peaveys in the crowd. Barnett went to the upper side and plaintiff to the lower side of the Wahoo log and both were on the upper side of the fallen hemlock log. By the continuous use of the peaveys, these two laborers got the Wahoo on top of the hemlock, and got it "balanced." The Wahoo then slued around scissors-like and caught the plaintiff and "rolled" him over the hemlock log, and then rolled over him and knocked him unconscious and seriously injured him.
When this was happening, Anglin, superintendent or foreman, and Lewis, were about 20 feet away. They only had a saw and an axe — no peaveys. Plaintiff was inexperienced in ball-hooting, but had seen men at different places ball-hooting. Plaintiff worked for defendant two days loading timber, and was injured on the third day about two o'clock in the afternoon. This was his first day's experience in getting logs down steep places in this manner.
In ball-hooting, five men are required — four men carry hooks — cant hooks with spikes in the ends — peaveys. Two men, each with a peavey, work at each end of the log. In this method they push the log down the steep incline and to keep it from a sudden turning, this injury to the laborers is usually prevented. One man cuts the brush and the four with the peaveys ball-hoot the log. When this method is pursued, the process is practically safe. Plaintiff says he did not ask for any more help because he thought it was the foreman's business to send men down and that he thought that the foreman knew his business.
When viewed, as in motions to nonsuit, evidence is ample to sustain these facts and to show that the injury resulted from the failure of the defendant to furnish a sufficient number of helpers equipped with proper and suitable tools, such as are in general and approved use in this business, and that it was impossible for the plaintiff and his colaborer, who had to be at the lower end of the log in order to get it up above the obstruction, to prevent the upper and heavier end from turning and catching the plaintiff between the green, heavy Wahoo log and the fallen hemlock log and seriously injuring him. There is no evidence that plaintiff was instructed in the method used or in its dangers, or knew of them. *Page 745 
Upon the evidence submitted, under appropriate allegations, we cannot sustain the defendant's exception to the refusal of the court below to grant his motion to dismiss as upon nonsuit. The defendant relies uponAngel v. Spruce Co., 178 N.C. 621. This case is different from the instant case, for that its facts are as follows: The plaintiff, Angel, and one, Willard Gregory, an employee of Spruce Co., were engaged in getting out timber from defendant's land, and in the course of their employment had cut down a tree that fell so as to make it inconvenient to saw it into logs. With the view of giving this tree a better placing they proceeded to cut off the branches and top of the tree and as they cut the latter the body of the tree rolled down on Spruce's foot injuring it. Spruce had long been engaged in work of this kind and this particular job was well within his experience and training and he was left largely to his own methods of doing it. A similar case is Rumbley v. R. R., 153 N.C. 457; Also, Simpsonv. R. R., 154 N.C. 51; Bunn v. R. R., 169 N.C. 648. In Winborne v.Cooperate Co., 178 N.C. 88, the Court, speaking through Hoke, J., says: "In order for liability to attach in case of simple everyday tools, it must appear, among other things, that the injury had resulted from a lack of such tools or defects therein which the employer is required to remedy, in the proper and reasonable discharge of his duties and that the lack or defect complained of and made the basis of the charge is of a kind from which some appreciable and substantial injury may be reasonably expected to occur." In Rogerson v. Hontz, 174 N.C. 27, the Court set aside an order of nonsuit, for that it appeared that the plaintiff was seriously injured by reason of a defective cant hook, and the evidence tended to show that this cant hook was an "implement suitable to the work and which the employer should supply."
If it was necessary to furnish, in these cited cases, such a suitable tool as a cant hook, it must needs be necessary in the instant case, to furnish helpers in sufficient number with peaveys, which are practically the same as cant hooks with the iron spike in the end of the staff, so that the injuries likely to flow therefrom will be guarded against in a reasonable manner. The instant case comes within Tate v. Mirror Co.,165 N.C. 279; Pigford v. R. R., 160 N.C. 101. An employer of labor may be held responsible for directions given, or methods used by reason of which an employee is injured. It is as much the duty of the master to exercise due care to provide the servant with reasonably safe means and method of work, such as proper assistance in the performance of his task, as it is to exercise due care to furnish him a safe place and proper tools and appliances. Smith v. R. R., 182 N.C. 296; Tritt v. Lumber Co., 183 N.C. 830;Gaither v. Clement, 183 N.C. 450 (this *Page 746 
case contains a clear and satisfactory discussion of the master's duty to exercise ordinary care to perform the duties required of him by law in relation to his employees); Owen v. Lumber Co., 185 N.C. 612; Murphy v.Lumber Co., 186 N.C. 746. This is a primary, absolute and nondelegable duty. When he entrusts the control of his employees to another, the duty is not shifted and the master is responsible for the proper exercise of the authority with which he vests his representative, and he is liable for any abuse of it, (Southwell v. R. R., 189 N.C. 417, 420; Hollifield v. Tel.Co., 172 N.C. 714, 725; Ainsley v. Lumber Co., 165 N.C. 122; West v.Tanning Co., 154 N.C. 44; Hamilton v. Lumber Co., 156 N.C. 523; Norrisv. Mills, 154 N.C. 474; Shives v. Cotton Mills, 151 N.C. 290; Holton v.Lumber Co., 152 N.C. 68; Shaw v. Mfg. Co., 146 N.C. 235, 239; Tanner v.Lumber Co., 140 N.C. 475; Allison v. R. R., 129 N.C. 336; Means v. R.R., 126 N.C. 424; Mason v. Machine Works, 28 Fed., 228; R. R. v.Thompson, 200 U.S. 206; R. R. v. Herbert, 116 U.S. 642), to the same extent as if he had been personally present and acting in that behalf himself. The evidence tends to establish that defendant's foreman was observant of what plaintiff was doing and his efforts to comply with his directions; and the jury has found that in the exercise of that degree of care that a prudent man would have exercised under similar circumstances, he knew or ought to have known that injury was likely to result, because there were an insufficient number of helpers equipped with proper tools with which to guide the log and prevent its sudden turning. It is the duty of the master to exercise due care to have a sufficient force to do the work at hand and to furnish to plaintiff while he was in the discharge of his duties a reasonably safe place in which to work. Pigford v. R. R.,supra; Hollifield v. Tel. Co., 172 N.C. 715, 725; Shaw v. Mfg. Co.,146 N.C. 235. The employer's duty to exercise ordinary care to furnish reasonably safe and suitable tools and appliances is clearly set forth inOrr v. Tel. Co., 130 N.C. 627; Cotton v. R. R., 149 N.C. 227.
The defendant has abandoned all exceptions, save that made to the court's refusal to grant his motion of nonsuit. As often said by this Court in considering such motions, the evidence must be construed most favorably for the plaintiff, and upon the evidence disclosed in the case at bar, whether plaintiff acted as a prudent man would have done under similar circumstances, is a question peculiarly within the province of the jury.Reid v. Rees, 155 N.C. 233.
The defendant further contends that the danger was obvious and that the plaintiff's own evidence is sufficient to establish this fact. We do not so conclude. Plaintiff's evidence fully justified the jury in finding that he was without actual experience in ball-hooting prior to the day of the *Page 747 
injury. He had seen this done on different occasions, but had never engaged in it before. His other work in lumbering was different from this, and, therefore, the plaintiff does not come within the rules set forth in the cases noted herein as cited by the defendant. The evidence further tends to justify the finding that the defendant well knew the dangers incident to this process and that it is the approved method to furnish a sufficient number of laborers with suitable appliances so that each one may be prevented from injury, such as was received by plaintiff. Plaintiff says that if he had been on the other side of the log, he would not have been injured; this does not change the degree of care required of the defendant, of necessity, either the plaintiff or Barrett had to be where the plaintiff was. Therefore, the jury had sufficient evidence to find that a reasonably prudent master in the exercise of due care would have known that in getting the Wahoo log over the obstruction, one laborer must be on either side of the log, and that it was reasonable to apprehend that injury might result if the upper and heavier end of the log was not handled with suitable appliances and sufficient help, and that, in the exercise of due care, such a master would have so provided.
Let it be certified that, in the trial, there was
No error.